FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JUL 25 AM 11 23

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

EDGAR R. MOORE,                    )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        CV 311-042
                                   )
JACOB HALL, Officer, and JOHN TRIPP, )
Doctor,                            )
                                   )
        Defendants.                )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Plaintiff, an inmate formerly incarcerated at Dodge State Prison ("DSP") in Chester,

Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is

proceeding *pro se* and *in forma pauperis* ("IFP").[1] The matter is presently before the Court

on separate motions to dismiss by Defendants Tripp and Hall. (Doc. nos. 19, 29.) Plaintiff

opposes the motions; in addition, Defendants have filed separate replies in support of their

respective motions, and Plaintiff has filed a document that combines a supplemental response

to Defendant Hall's motion to dismiss with a reply in support of his response to Defendant

Tripp's motion to dismiss. (Doc. nos. 28, 31, 33, 34, 37.) For the reasons set forth below,

the Court **REPORTS** and **RECOMMENDS** that Defendant Tripp's motion to dismiss be

**GRANTED**, that Plaintiff's claim against Defendant Tripp be **DISMISSED WITHOUT**

---

[1]The Court initially revoked Plaintiff's IFP status following his release from
confinement. However, in an Order issued simultaneously with the instant Report and
Recommendation, the Court has determined that Plaintiff is still entitled to proceed IFP in
this action despite his recent release.

**PREJUDICE**, that Defendant Tripp be **DISMISSED** from this action, and that Defendant Hall's motion to dismiss be **DENIED**.

## I.     BACKGROUND

In his complaint, Plaintiff alleges that he was scheduled to undergo knee surgery in December of 2010. (Id. at 5.) According to Plaintiff, on December 16, 2010, Defendant Hall came to Plaintiff's cell and told him that he was to be transferred that night to a different facility to have the surgery. (Id.) Plaintiff alleges that Defendant Hall then told him that he could instead choose to wait until after the holidays to transfer to the new facility for the surgery. (Id.) Plaintiff reports that he then asked Defendant Hall whether "he was sure about this,"[2] following which Defendant Hall said that he was and left. (Id.) Plaintiff avers that a few moments after this conversation, he attempted to use the intercom system to inform Defendant Hall that he wanted to proceed with the surgery immediately because of the pain he was suffering, but Defendant Hall did not respond. (Id.)

Plaintiff alleges that the following morning he was advised that "he had refused to go and have the surgery." (Id.) Plaintiff maintains that Defendant Tripp, his treating physician, discontinued his medications at that time and informed Plaintiff that it would be some time before he could be rescheduled for surgery because of his refusal. (Id.) Plaintiff, however, maintains that he never refused the surgery or any other treatment, and notes that

---

[2] Of note, while Plaintiff states that he asked if Defendant Hall was sure about whether Plaintiff could postpone the surgery – *i.e.*, whether it was possible to undergo the surgery at a later date – Plaintiff does not state that he refused the surgery or that he told Defendant Hall he wanted to postpone the surgery. (Doc. no. 1, p. 5.)

he never signed a written refusal of treatment, as is typically required by prison officials. (Id. at 5-6.)

Plaintiff further alleges that he was "placed at the bottom of the list for surgery," and that his surgery was significantly delayed. (Id. at 7.) Although the surgery was eventually performed, Plaintiff asserts that the delay in the surgery caused him to suffer physical pain and mental stress; he also states that the delay caused him to depend heavily on his other leg while awaiting surgery and that, as a result, he now needs surgery on his other knee as well. (Id.) Plaintiff states that Dr. Tripp again discontinued his medication following the surgery. (Id.) In his demand for relief, Plaintiff seeks an award of monetary damages against each Defendant. (Id. at 8.)

Because Plaintiff filed this case as a prisoner proceeding IFP, the Court screened his complaint pursuant to 28 U.S.C. §§ 1915(e) & 1915A. Based on Plaintiff's allegations of delayed and inadequate medical care, the Court allowed him to proceed against Defendants Tripp and Hall with § 1983 claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment.[3] (Doc. no. 11.)

## II. DISCUSSION

Defendants Tripp and Hall responded to Plaintiff's complaint by filing separate motions to dismiss. The Court will address these motions in turn, concluding for the reasons

---

[3]Upon screening Plaintiff's complaint, the Court additionally recommended the dismissal of former-Defendant Marty Allen. The Honorable Dudley H. Bowen, Jr., United States District Judge, adopted that recommendation as the opinion of the District Court. (Doc. no. 14.)

set forth below that Defendant Tripp's motion to dismiss should be granted and that Defendant Hall's motion to dismiss should be denied.

### A.     Defendant Tripp's Motion to Dismiss

In support of his motion to dismiss, Defendant Tripp argues that Plaintiff failed to exhaust his administrative remedies as to the claim against him and that the claim should therefore be dismissed. (Doc. no. 19-1, pp. 4-8; doc. no. 31, pp. 2-4.) Defendant Tripp also argues that Plaintiff's complaint fails to state a claim against him upon which relief may be granted and that he is entitled to qualified immunity. (Doc. no. 19-1, pp. 8-19; doc. no. 31, pp. 4-6.) In response, Plaintiff contends that he filed his grievances to the best of his ability, that the grievance form provided inadequate space, and that Defendant Tripp should be held liable notwithstanding any failure on Plaintiff's part to properly exhaust his claims. (Doc. no. 28, pp. 2-4.) Plaintiff also contends that his complaint states a valid claim against Defendant Tripp, and he disputes Defendant Tripp's entitlement to qualified immunity. (Id. at 4-5.)

As explained below, the Court concludes that Defendant Tripp has the better argument on the issue of exhaustion, making it unnecessary to reach the other arguments in Defendant Tripp's motion to dismiss.

### 1.     Legal Standard for Exhaustion of Administrative Remedies

Where a defendant has filed a motion to dismiss based on failure to exhaust administrative remedies, as Defendant Tripp has here, the Eleventh Circuit has laid out a two-step process for courts to use in resolving such motions.

4

First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

. . . .

If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues. . . . The defendants bear the burden of proving that the plaintiff has failed to exhaust his administrative remedies. . . . Once the court makes findings on the disputed issues of fact, it then decides whether under those findings, the prisoner has exhausted his available administrative remedies.

Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). Where exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

### 2. Plaintiff's Failure to Exhaust Administrative Remedies

Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Prison Litigation Reform Act's ("PLRA") mandatory exhaustion requirement applies to all federal claims brought by any

5

inmate.[4] <u>Porter v. Nussle</u>, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998). If an administrative remedy is "available," it must be exhausted to satisfy § 1997e(a). <u>See</u> <u>id.</u> at 1326 (explaining that under the PLRA, courts are "to focus solely on whether an administrative remedy program is 'available'"). Under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" <u>Johnson v. Meadows</u>, 418 F.3d 1152, 1156 (11th Cir. 2005), <i>cert. denied</i>, 548 U.S. 925 (2006).

Furthermore, the PLRA also "requires proper exhaustion." <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. <u>Id.</u> at 90-91 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. <u>Johnson</u>, 418 F.3d at 1159.

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, an inmate must complete the administrative process *before* initiating

---

[4]As noted previously, Plaintiff was released from confinement subsequent to the commencement of this action. Nevertheless, his release from prison does not excuse him from the provisions of the PLRA. <u>Harris v. Garner</u>, 216 F.3d 970, 981 (11th Cir. 2000) ("The status that counts . . . is whether the plaintiff was a 'prisoner confined in a jail, prison, or other correctional facility' at the time the federal civil action was 'brought,' i.e., when it was filed.").

suit. <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*); <u>see also</u> <u>Miller v. Tanner</u>, 196 F.3d 1190, 1193 (11th Cir. 1999).[5]

As Defendants correctly observe, the administrative grievance procedure applicable in this case is governed by the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001. (Doc. no. 19-1, pp. 5-6; doc. no. 31 (hereinafter "Fuqua Aff."), ¶¶ 4-5 & Attach A.) Once an inmate has unsuccessfully attempted to resolve a complaint through discussion with the staff involved, the administrative remedies procedure commences with the filing of an informal grievance. SOP IIB05-0001 § VI(B). The inmate has ten (10) calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the informal grievance. <u>Id.</u> § VI(B)(5). The timeliness requirements of the administrative process may be waived upon a showing of good cause. <u>See</u> <u>id.</u> §§ VI(C)(2) & (D). The SOP requires that an inmate be given a response to his informal grievance within 10 calendar days of its receipt by the inmate's counselor; the informal grievance procedure must be completed before the inmate will be issued a formal grievance. <u>Id.</u> §§ VI(B)(12)-(13).

If unsatisfied with the resolution of his informal grievance, an inmate must complete a formal grievance form and return it to his counselor within five business days of his receipt of the written resolution of his informal grievance. <u>Id.</u> § VI(C)(2). Once the formal

---

[5]Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. <u>See, e.g.</u>, <u>McKinney v. Carey</u>, 311 F.3d 1198, 1200 (9th Cir. 2002); <u>Medina-Claudio v. Rodriguez-Mateo</u>, 292 F.3d 31, 36 (1st Cir. 2002); <u>Neal v. Goord</u>, 267 F.3d 116, 121-22 (2d Cir. 2001), *overruled in part on other grounds by* <u>Porter</u>, 534 U.S. at 532; <u>Jackson v. Dist. of Columbia</u>, 254 F.3d 262, 269 (D.C. Cir. 2001); <u>Freeman v. Francis</u>, 196 F.3d 641, 645 (6th Cir. 1999); <u>Perez v. Wisconsin Dep't of Corr.</u>, 182 F.3d 532, 538 (7th Cir. 1999).

grievance is given to the counselor, the Warden/Superintendent has 30 calendar days to respond. Id. § VI(C)(14). If the inmate is not satisfied with the Warden's response to the formal grievance, he has five business days from the receipt of the response to file an appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has 90 calendar days after receipt of the grievance appeal to respond. Id. §§ VI(D)(2), (5). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id. § VI(D).

Here, Defendant Tripp has shown that Plaintiff's claim against him should be dismissed without prejudice because of Plaintiff's failure to satisfy the exhaustion requirement of § 1997(e). In support of his motion to dismiss, Defendant Tripp has produced the affidavit of Nikki Fuqua, the Chief Counselor and Grievance Coordinator at DSP. Ms. Fuqua attests that on December 16, 2010, Plaintiff filed an informal grievance alleging that Defendant Hall improperly caused him not to be transported that day. (Fuqua Aff. ¶ 21 & Attach. F.) The informal grievance was denied, and the explanation given for the denial was that Plaintiff had refused his appointment.[6] (Id.)

Plaintiff then filed a formal grievance, in which he set forth allegations regarding the alleged incident with Defendant Hall that are materially similar to the allegations in his complaint. (Id.) In addition, Plaintiff alleged for the first time in his formal grievance that Defendant Tripp had discontinued his pain medication. (Id.) The Warden denied the grievance as it related to Defendant Hall's actions, noting that Plaintiff should not have

---

[6]This reference to Plaintiff's "appointment" appears to refer to the appointment scheduled for his surgery.

8

refused his appointment and that Defendant Hall's conduct was "being addressed administratively." In addition, the Warden specified that Plaintiff had not included the allegation regarding Defendant Tripp's discontinuance of his pain medication in the informal grievance and that, as a result, that issue would not be addressed. (Id.)

Plaintiff appealed the denial of that grievance, reasserting his allegations regarding Defendant Hall's actions and Defendant Tripp's failure to provide needed medication, along with new allegations concerning the medical care he received after undergoing the postponed surgical procedure. The denial of Plaintiff's appeal specified that Defendant Hall's conduct had been handled administratively and that the other issues would not be addressed because Plaintiff had not raised them in his informal grievance. (Id.) Ms. Fuqua attests that Plaintiff never filed an informal grievance over Dr. Tripp's discontinuation of his pain medicine or the care he received following his surgery.[7] (Id. ¶ 22.)

---

[7]The grievance documentation submitted by Ms. Fuqua also indicates that Plaintiff filed five other grievances while at DSP, the dates of which range from June 3, 2010, to December 7, 2010. (Fuqua Aff., Attach. C.) Plaintiff attempts to set forth arguments related to two of these prior grievances in his reply. (See doc. no. 34, pp. 2-3.) First, the Court need not consider these arguments, as it is improper to raise contentions for the first time in a reply brief. See Waddell v. Holiday Isle, LLC, Civil Action 09-0040, 2009 U.S. Dist. LEXIS 67669, at *11-13 & n.5 (S.D. Ala. Aug. 4, 2009) (collecting cases in support of the proposition that "[d]istrict courts . . . ordinarily should not consider arguments presented for the first time in a reply brief"); see also Herring v. Sec'y, Dep't of Corr., 397 F.3d 1338, 1342 (11th Cir. 2005) ("As we repeatedly have admonished, 'arguments raised for the first time in a reply brief are not properly before a reviewing court.'" (quoting United States v. Coy, 19 F.3d 629, 632 n.7 (11th Cir. 1994))); Autotech Techs. Ltd. P'ship v. AutomationDirect.com, Inc., 249 F.R.D. 530, 536 (N.D. Ill. 2008) ("Reply briefs are for replying, not for raising new arguments or arguments that could have been advanced in the opening brief."). Moreover, the arguments are irrelevant in that Plaintiff does not contend, and there is nothing in the record to suggest, that those grievances relate to the claims at issue here.

In light of this information, Defendant Tripp contends that the only claim that Plaintiff has properly exhausted is the claim against Defendant Hall for causing his surgical procedure to be delayed. More to the point, Defendant Tripp contends that Plaintiff did not properly exhaust the claim based on his allegations that Defendant Tripp improperly denied Plaintiff pain medication and otherwise provided inadequate medical care. (Doc. no. 19-1, pp. 7-8.)

Plaintiff does not dispute Ms. Fuqua's account of the grievances he submitted at DSP. (See doc. nos. 28, 34.) However, as noted previously, he maintains that he filed his grievances to the best of his ability, that the grievance form provided inadequate space, and that Defendant Tripp should be held liable notwithstanding any failure on Plaintiff's part to properly exhaust his claims. (Doc. no. 28, pp. 2-4.)

Unfortunately for Plaintiff, as explained above, the Court has no discretion to waive the exhaustion requirement. Alexander, 159 F.3d at 1325-26. Moreover, Defendant Tripp has shown that Plaintiff failed to properly exhaust the administrative procedure concerning his claim against Defendant Tripp. In particular, Plaintiff failed to comply with the applicable procedure in that he attempted to raise the claim in later steps of the grievance procedure without initially raising the claim in an informal grievance. See Woodford, 548 U.S. at 90-91 (noting that a prisoner must "us[e] all steps" in the administrative process and must comply with all administrative "deadlines and other critical procedural rules" (internal quotation omitted)). The fact that Plaintiff was able to successfully complete the exhaustion with respect to at least one of his claims – the claim against Defendant Hall – belies his contention that he lacked the ability to complete the administrative procedure. Plaintiff's

assertion regarding the space provided on the informal grievance form is also insufficient to excuse the grievance issue, as he has not shown that the space prevented him from including the necessary allegations or that he could not have exhausted the claim by filing a separate grievance.

Accordingly, Defendant Tripp's motion to dismiss should be granted, and Plaintiff's claim against Defendant Tripp should be dismissed without prejudice for failure to comply with the exhaustion requirement of §1997e(a). As that is the only claim against Defendant Tripp, he should be dismissed from this case.

### B. Defendant Hall's Motion to Dismiss

Unlike Defendant Tripp, Defendant Hall does not contest the issue of exhaustion as to Plaintiff's claim against him. However, Defendant Hall argues in his motion to dismiss that Plaintiff's complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because it fails to state a claim against him upon which relief may be granted. Defendant Hall also asserts entitlement to qualified immunity. (Doc. no. 29-1.) Plaintiff disputes these contentions. (Doc. nos. 33, 34.) For the reasons set forth below, Defendant Hall's motion should be denied.

### 1. Standard for Motion to Dismiss Pursuant to Rule 12(b)(6)

A motion under Rule 12(b)(6) challenges the legal sufficiency of the complaint. "In essence, a movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992) (Edenfield, J.). In deciding a motion to dismiss under Rule 12(b)(6), all of the non-moving party's allegations must be presumed true and all reasonable inferences must be construed in the light most

favorable to the non-moving party. Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990). Furthermore, a claim should not be dismissed if the facts alleged in the complaint are sufficient to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561-62 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, granting a motion to dismiss is disfavored and rare. Brooks v. Blue Cross and Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Finally, while factual allegations in the complaint must be taken as true when considering a motion to dismiss, there is no requirement that the Court must accept as true the plaintiff's conclusions of law. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir. 1985) (per curiam). With these principles in mind, the Court turns its attention to the instant motion.

### 2.    Plaintiff's Complaint States a Valid § 1983 Claim Against Defendant Hall

Defendant Hall argues that Plaintiff's allegations fail to state a valid claim because they do not show that Defendant Hall "had subjective knowledge of [Plaintiff's] pain or his desire to have knee surgery the next day as originally scheduled." (Doc. no. 29-1, p. 6.) Defendant Hall further argues that Plaintiff's allegations fail to demonstrate that he disregarded any risk to Plaintiff's health in that he did not mandate that Plaintiff postpone the surgery and offered the option to postpone the surgery out of an apparent concern that Plaintiff would have to spend the holiday season at an unfamiliar prison. (Id. at 7.) Also,

Defendant Hall asserts that he cannot be liable because offering Plaintiff the option of postponing his surgery, while perhaps negligent, is insufficient to give rise to liability on an Eighth Amendment claim. (Id. at 8.) Plaintiff, on the other hand, emphasizes that he does not allege that he assented to postpone the surgery; thus, he argues that his complaint adequately states a claim based on the allegation that Defendant Hall caused the delay in his scheduled surgical procedure. (Doc. no. 33, pp. 2-3.)

"The Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs." Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Claims of deliberate indifference to serious medical needs are evaluated under a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Thomas v. Bryant, 614 F.3d 1288, 1304 (11th Cir. 2010).

To state a claim for deliberate indifference that violates the Eighth Amendment, the facts alleged must demonstrate "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." Goebert v. Lee County, 510 F.3d 1312, 1326-27 (11th Cir. 2007); see also Farmer, 511 U.S. at 837. To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Farmer, 511 U.S. at 835-39; Thomas, 614 F.3d at 1304

(explaining that the deliberate indifference standard requires a prison official to have disregarded an excessive risk of which he was actually aware).

Furthermore, to state a valid deliberate indifference claim, a plaintiff must allege medical care that is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). The Eleventh Circuit has held that allegations of an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain may suffice in this regard. Id. at 1543-44; Bingham v. Thomas, 654 F.3d 1171, 1176 (11th Cir. Ga. 2011). Allegations of mere negligence or malpractice, in contrast, do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, the Court finds that Plaintiff has adequately pled an Eighth Amendment § 1983 claim against Defendant Hall for causing a delay in his scheduled surgical procedure. Plaintiff has satisfied the objective element of his claim in that he alleges he suffered a condition related to his knee that required surgical intervention.[8] See Goebert, 510 F.3d at 1326 (defining an objectively serious medical need as one that "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention" (quoting Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1187 (11th Cir.1994))). Further bolstering the objective prong of

---

[8]Of note, Defendant Hall provides no argument that Plaintiff's allegations do not satisfy the objective prong of his claim, but rather asserts that, presuming he meets the objective prong, he fails on the subjective component of the claim. (Doc. no. 29-1, p. 6.)

14

Plaintiff's claim is his allegation that his need for the surgery was sufficiently severe that the delay in the procedure caused him physical pain and mental stress; he also states that the delay caused him to depend heavily on his other leg while awaiting surgery and that, as a result, he now needs surgery on his other knee.[9] (Id. at 7.)

Regarding the subjective element, Plaintiff has adequately alleged that Defendant Hall disregarded a known risk of serious harm by causing a delay in Plaintiff's surgical procedure. According to Plaintiff's complaint, Defendant Hall knew Plaintiff suffered from a condition that was sufficiently severe that medical personnel had scheduled him for surgery. (See doc. no. 1, p. 5.) Viewing the facts alleged in the light most favorable to Plaintiff, as the Court must at this stage, it may be reasonably inferred based on this knowledge that Defendant Hall was also aware that causing Plaintiff not to receive the surgical procedure as scheduled would place Plaintiff at risk of suffering serious harm.

Consistent with this determination, the Court rejects Defendant Hall's contention that dismissal is warranted because of the lack of an allegation that he "had subjective knowledge of [Plaintiff's] pain or [of Plaintiff's] desire to have knee surgery the next day as originally scheduled." (Doc. no. 29-1, p. 6.) Plaintiff need not allege that Defendant Hall had specific knowledge of his level of pain or his "desire" for needed medical attention; it suffices that he was aware of the risk arising from Plaintiff's serious medical need. See Thomas, 614 F.3d

---

[9]Defendant Hall characterizes Plaintiff's allegation that he now needs surgery on his other leg as an admission that his new injury is treatable and, therefore, not sufficiently serious to allow for a claim based on delayed medical care. (Doc. no. 29-1, p. 8.) The Court declines this invitation to read an allegation that an individual has suffered an injury that requires surgery as an admission that the injury is not serious.

at 1304 (noting that actual awareness of a risk of serious harm satisfies the scienter requirement of a deliberate indifference claim).

Additionally, Plaintiff alleges that Defendant Hall asked him if he wanted to postpone his surgery and immediately left after Plaintiff asked him if he was sure that was a possibility. Plaintiff further alleges that he was informed the next day that he had refused to have the surgery, from which it may be reasonably inferred that Defendant Hall falsely reported that Plaintiff had declined the medical procedure. (Doc. no. 1, pp. 5-6.) Taken as true and viewed in the light most favorable to Plaintiff, these allegations demonstrate disregard of a known risk by conduct that exceeds mere negligence. See Goebert, 510 F.3d at 1326; see also Bingham, 654 F.3d at 1176 (noting that the deliberate indifference standard may be satisfied where a prison official "delays necessary treatment for non-medical reasons").

Again, Defendant Hall's arguments to the contrary are without merit. At the core of Defendant Hall's position is the mistaken notion that Plaintiff alleges that he told Defendant Hall he wanted to postpone the surgery. (See, e.g., doc. no. 29-1, p. 7 ("Plaintiff himself indicates that he informed Officer Hall that he wanted to postpone his surgery.").) That is not what Plaintiff's complaint says. As noted previously, Plaintiff alleges that he asked if Defendant Hall was sure postponement was an option, following which Defendant Hall left. (Doc. no. 1, p. 5.) Indeed, Plaintiff specifies in his complaint that he "never refused" the surgical procedure. (Id.)

Defendant Hall likewise misses the mark by arguing that, under Plaintiff's allegations, he did not mandate that Plaintiff postpone the surgery, as he fails to offer any

meaningful distinction between "mandating" a delay and causing a delay by falsely reporting that Plaintiff had refused treatment. (Doc. no. 29-1, p. 7.) Equally unavailing is Defendant Hall's contention that he offered the option to postpone the surgery not because of any indifference to Plaintiff's serious medical need but out of an apparent concern that Plaintiff would have to spend the holiday season at an unfamiliar prison. (Id.) This argument is premised on the assumption that Defendant Hall acted pursuant to a benign motivation, which is apparently derived from Plaintiff's allegation that Defendant Hall told him he could postpone the surgery until after the holidays. To credit this characterization would require the Court to draw an inference in favor of Defendant Hall and against Plaintiff, which is inconsistent with the standard for adjudicating a Rule 12(b)(6) motion. See Powell, 914 F.2d at 1463.

Therefore, Plaintiff has adequately pled his Eighth Amendment claim that Defendant Hall acted with deliberate indifference to his serious medical need, and Defendant Hall's contention that Plaintiff's complaint fails to state a claim upon which relief may be granted is without merit.

### 3. Defendant Hall Is Not Entitled to Qualified Immunity Based on the Allegations in Plaintiff's Complaint

Finally, the Court concludes that Defendant Hall is not entitled to qualified immunity at the current stage of this action. The crux of Defendant Hall's qualified immunity argument is that, even if the Court finds that Plaintiff stated a valid Eighth Amendment claim, "[t]here is no authority for the proposition that allowing an inmate to delay a medical procedure constitute[s] deliberate indifference." (Doc. no. 29-1, pp. 12-13.) Plaintiff argues

17

that Defendant Hall is not entitled to qualified immunity in light of the allegation that he acted with deliberate indifference in causing Plaintiff's surgery to be delayed. (Doc. no. 33, p. 9.)

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Townsend v. Jefferson County, 601 F.3d 1152, 1157 (11th Cir. 2010). The defendant must show that he was acting within his discretionary authority; if he does, then "the plaintiff must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." Townsend, 601 F.3d at 1158 (punctuation omitted) (quoting Holloman ex. rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004)). "A right is clearly established if, in light of already-existing law, the unlawfulness of the conduct is apparent, and if a constitutional rule applies with obvious clarity to give an official fair warning that violating that right is actionable." Bennett v. Hendrix, 423 F.3d 1247, 1255 (11th Cir. 2005) (internal citations omitted). Also, the Eleventh Circuit has held: "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decision of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins by Hall v. Talladega City Bd. of Educ., 115 F.3d 821, 826 n.4 (11th Cir. 1997).

Here, the Court agrees with Defendant Hall that he was acting within his discretionary authority because "[a]t all times relevant to the allegations in Plaintiff's

complaint, [he] was acting within the scope of his authority as an officer at [DSP] . . . ." (Doc. no. 29-1, p. 10.) However, for the reasons outlined above, the Court concludes that Plaintiff's complaint states a valid claim for the violation of his Eighth Amendment rights, thereby establishing the first prong of his burden under the qualified immunity analysis. See supra Part II.B.2. Moreover, as discussed above, see id., it is well-established under Supreme Court and Eleventh Circuit law that a prisoner may state an Eighth Amendment claim by alleging that a prison official caused a sufficiently serious delay in access to needed medical care. See, e.g., Estelle, 429 U.S. at 104 (explaining that the type of deliberate indifference "proscribed by the Eighth Amendment" may be "manifested by . . . delaying access to medical care"); Bingham, 654 F.3d at 1176 ("[A] defendant who delays necessary treatment for non-medical reasons may exhibit deliberate indifference."); Adams, 61 F.3d at 1544 ("[D]elay in access to medical care that is 'tantamount to 'unnecessary and wanton infliction of pain,'' may constitute deliberate indifference to a prisoner's serious medical needs." (quoting Brown v. Hughes, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam)); Rogers, 792 F.2d at 1058 ("If prison guards delay . . . access to medical care . . ., the eighth amendment is violated"). In light of the Eleventh Circuit and Supreme Court case law delineating the nature of the Eighth Amendment right at issue in Plaintiff's claim, the Court rejects Defendant Hall's assertion that Plaintiff's allegations fail to demonstrate a violation of clearly established law.

The Court finds inapposite Defendant Hall's assertion that "[t]here is no authority for the proposition that allowing an inmate to delay a medical procedure constitute[s] deliberate indifference." (Doc. no. 29-1, p. 13.) Like Defendant Hall's arguments discussed above, this

contention is premised on the erroneous assertion that Plaintiff alleges in his complaint that he affirmatively refused the surgery as originally scheduled. See supra Part II.B.2.

In sum, Plaintiff has adequately pled his Eighth Amendment deliberate indifference claim against Defendant Hall, and Defendant Hall is not entitled to qualified immunity based on the allegations in Plaintiff's complaint. Consequently, Defendant Hall's motion to dismiss should be denied.

## III.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendant Tripp's motion to dismiss be **GRANTED** (doc. no. 19), that Plaintiff's claim against Defendant Tripp be **DISMISSED WITHOUT PREJUDICE**, that Defendant Tripp be **DISMISSED** from this action, and that Defendant Hall's motion to dismiss be **DENIED** (doc. no. 29). Should this recommendation be adopted as the opinion of the District Court, Defendant Hall should be required to file an answer to Plaintiff's complaint within 14 days of such adoption, consistent with Federal Rule of Civil Procedure 12(a)(4)(A). Furthermore, the stay of discovery currently in place should be lifted, and a Scheduling Notice setting the deadlines in this case should issue upon the filing of Defendant Hall's answer.

SO REPORTED and RECOMMENDED this 25th day of July, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE